**Ernany DE JOSEPH, Plaintiff,**

v.

**ODFJELL TANKERS (USA), INC., Odfjell Tankers A.S.A., Odfjell A.S.A., and M/T Bow Fagus, Defendants.**

**No. Civ.A. G–01–215.**

United States District Court, S.D. Texas, Galveston Division.

April 18, 2002.

Ronald Joseph Kormanik, Sydow Kormanik, Houston, TX, Michael David Sydow, Berner Liipfert, Houston, TX, for Plaintiff.

Kenneth D. Kuykendall, Royston Rayzor, Houston, TX, James Richard Watkins, Royston Rayzor, Galveston, TX, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

KENT, District Judge.

Plaintiff Ernany De Joseph ("De Joseph") is a Filipino seaman who seeks to recover damages under the Jones Act, 46 U.S.C. § 688 et seq., and the General Maritime Law of the United States, for injuries

allegedly sustained while working aboard the M/T BOW FAGUS. Now before the Court is a Motion to Dismiss filed by Defendants Odfjell A.S.A., Odfjell Chemical Tankers A.S.A., and Odfjell (USA), Inc. (collectively "Defendants").[1] Because Plaintiff's employment contract contains a valid forum selection clause mandating that Plaintiff's dispute be brought before a Filipino tribunal, Defendants' Motion to Dismiss is hereby **GRANTED,** and Plaintiff's action is hereby **DISMISSED WITHOUT PREJUDICE** for refiling in the Republic of the Philippines.

The facts giving rise to this lawsuit are predominantly undisputed. Plaintiff De Joseph is a Filipino citizen and resident who was working as a seaman aboard a Norwegian-flagged vessel known as the M/T BOW FAGUS. Defendant Odfjell A.S.A. was Plaintiff's employer, as well as the manager and operator of the vessel. Defendant Odfjell Chemical Tankers A.S.A. was the owner of the M/T BOW FAGUS, and Defendant Odfjell (USA), Inc. was the port operator. On November 30, 1999, De Joseph, like all other Filipino seamen hired to work aboard foreign vessels, executed a contract of employment approved by the Philippine Overseas Employment Agency ("POEA"). Paragraph 4 of the POEA employment contract stipulates:

> All claims, complaints or controversies relative to the implementation of this overseas employment contract shall be resolved through the established Grievance Machinery in the Revised Employment Contract for Seafarers. If result of the procedure is unsatisfactory to any of the parties, it may be appealed to the management of the company or with the Philippine Labor Attache or consular office overseas. This procedure shall be without prejudice to any action that the parties may take before the appropriate authority.

The contract also states in Paragraph 1 that "[t]he terms and conditions of the revised Employment Contract governing the employment of all seafarers approved per Department Order No. 33 and Memorandum Circular No. 55 both Series of 1996 shall be strictly and faithfully observed."

Pursuant to Paragraphs 1 and 4 of the POEA employment contract, the Revised Employment Contract for Seafarers ("Revised Employment Contract") is incorporated into the POEA employment contract. The Revised Employment Contract includes the following pertinent provisions. Section 16(A) sets forth the seaman's grievance machinery, specifically requiring an aggrieved seaman to first submit his complaint to the head of the relevant department, and then, and only upon obtaining an unsatisfactory result, to lodge an appeal with the management of the company or a Philippine Labor Attache or consular office overseas. Section 16(C) makes clear, however, that the grievance procedure "shall be without prejudice to the jurisdiction of the Philippine Overseas Employment Administration (POEA) or the National Labor Relations Commission (NLRC) over any unresolved complaints arising out of shipboard employment that shall be brought before it by the seafarer." Section 28 of the Revised Employment Contract next provides that "[t]he Philippine Overseas Employment Administration (POEA) or the National Labor Relations Commission (NLRC) shall have original and exclusive jurisdiction over any and all disputes or controversies arising out of or

---

**1.** According to Defendants, Plaintiff improperly designated in his Original Complaint Defendant Odfjell Chemical Tankers A.S.A. as Odfjell Tankers A.S.A., and Defendant Odfjell (USA), Inc. as Odfjell Tankers (USA), Inc. For purposes of clarity only, the Court will refer to Defendants by the names averred in their Motion.

by virtue of this Contract." Additionally, Section 29 dictates that "[a]ll rights and obligations of the parties to this Contract, including the annexes thereof, shall be governed by the laws of the Republic of the Philippines, international conventions, treaties and covenants where the Philippines is a signatory." Finally, the Revised Employment Contract also incorporates the Migrant Workers' and Overseas Filipinos' Act of 1995 ("MWOFA"), which grants the Labor Arbiters of the National Labor Relations Commission ("NLRC") in the Philippines the exclusive jurisdiction to hear "claims arising out of an employer-employee relationship or by virtue of any law or contract involving Philippine workers for overseas employment including claims for actual, moral, exemplary and other forms of damages."

On August 3, 2000, while the M/T BOW FAGUS was docked in the navigable waters of Houston, Texas, Plaintiff De Joseph was ordered to wash and dry Tank 9C in preparation for cargo loading. While conducting the standard washing and purging operations, De Joseph fell down the tank's main hatch and onto a ladder well landing. De Joseph was immediately rushed to Ben Taub Hospital in Houston, Texas for emergency medical treatment, where physicians fused together two broken vertebrae in his neck with a steel rod. On April 12, 2001, De Joseph filed suit against Defendants seeking to recover damages under the Jones Act and the General Maritime Law of the United States for injuries arising from the August 3, 2000 incident. Defendants thereafter filed a Motion to Dismiss, asking this Court to dismiss Plaintiff's action on the basis of the forum selection clause contained in Plaintiff's POEA employment contract, or in the alternative, on the grounds of forum non conveniens.[2] Because the Court finds that the forum selection clause at issue here is both valid and enforceable, it will not reach the issue of forum non conveniens.

## II.

Although Defendants neglect to identify the precise procedural rule under which their Motion to Dismiss is brought, this Court has recently opined that a motion to dismiss based upon the enforcement of a forum selection clause is governed by Fed. R.Civ.P. 12(b)(3). *See Psarros v. Avior Shipping, Inc.,* No. Civ.A. G-01-284, 2002 WL 507534, at *2, 4 (S.D.Tex. Mar.29, 2002) (Kent, J.); *MacPhail v. Oceaneering Int'l, Inc.,* 170 F.Supp.2d 718, 721 (S.D.Tex.2001) (Kent, J.) (both observing that although the Fifth Circuit has not conclusively established that Rule 12(b)(3) is the precise procedural rule governing a motion to dismiss based upon the enforcement of a forum selection clause, the Fifth Circuit's holding in *Mitsui & Co. (USA), Inc. v. M/V MIRA,* 111 F.3d 33, 37 (5th Cir.1997), implies such a view).[3]

---

**2.** Defendants also contend that this Court could dismiss Plaintiff's lawsuit without direction, and allow Plaintiff to refile in either Norway or the Philippines, as authorized by the Norwegian Standard Employment Contract that Plaintiff also signed on December 1, 1999. However, the Parties concur, and it is clear to this Court, that the Norwegian employment contract is regarded as a mere addendum to the POEA employment contract, such that the terms of the POEA employment contract control in cases of conflict. As such, the Court disagrees that Plaintiff can also pursue his cause of action in Norway, and

therefore declines to deviate from the express language of the POEA employment contract, which requires Plaintiff resolve his grievance exclusively in the Philippines.

**3.** In *Mitsui,* the district court characterized its dismissal pursuant to a forum selection clause as a Rule 12(b)(3) motion to dismiss. *See id.,* No. CIV.A.95-4224, 1996 WL 444193, at *1 (E.D.La. Aug.7, 1996). Although the Fifth Circuit did not address the exact procedural issue upon appeal, it fully affirmed the district court's decision to dismiss the lawsuit. *See Mitsui,* 111 F.3d at 37. The Seventh, Ninth

Rule 12(b)(3) permits a defendant to move for dismissal of an action on the basis of improper venue. The majority of courts agree that once a defendant has raised the issue of improper venue by motion, the burden of sustaining venue lies with the plaintiff. *See McCaskey v. Continental Airlines, Inc.*, 133 F.Supp.2d 514, 523 (S.D.Tex.2001) (citing *Seariver Maritime Fin. Holdings, Inc. v. Pena*, 952 F.Supp. 455, 458 (S.D.Tex.1996)); *Bigham v. Envirocare of Utah, Inc.*, 123 F.Supp.2d 1046, 1048 (S.D.Tex.2000); *EEOC v. Mustang Mobile Homes, Inc.*, 88 F.Supp.2d 722, 724 (W.D.Tex.1999). *But see Texas Marine & Brokerage, Inc. v. Euton*, 120 F.Supp.2d 611, 612 (E.D.Tex.2000); *Bounty–Full Entm't, Inc. v. Forever Blue Entm't Group, Inc.*, 923 F.Supp. 950, 957–58 (S.D.Tex.1996). In the absence of an evidentiary hearing on the matter, a court should allow a plaintiff to carry this burden by setting forth facts that, if taken as true, establish venue. *See McCaskey*, 133 F.Supp.2d at 523; *Bigham*, 123 F.Supp.2d at 1048; *cf. Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.1994) (determining that when a court rules upon a motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, "the plaintiff may bear his burden by presenting a prima facie case that personal jurisdiction is proper"). The court should therefore accept uncontroverted facts contained in the plaintiff's pleadings as true and resolve any conflicts in the parties' affidavits in the plaintiff's favor. *McCaskey*, 133 F.Supp.2d at 523. While a defendant need not affirmatively disprove all bases for the plaintiff's venue choice, the court will nevertheless give the plaintiff every benefit of the doubt in ascertaining the controlling facts. *See id.*

and Tenth Circuits have issued similar holdings. *See, e.g., R.A. Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir.1996); *Frietsch v. Refco, Inc.*, 56 F.3d 825, 830 (7th Cir.1995); *Riley v. Kingsley Underwriting*

## III.

The forum selection clause at issue here has twice been confronted by courts in this jurisdiction. In *Marinechance Shipping Ltd. v. Sebastian*, 143 F.3d 216 (5th Cir. 1998), the Fifth Circuit examined a virtually identical forum selection clause contained in a POEA employment contract that also incorporated by reference the provisions of the Revised Employment Contract for Seafarers. Relying upon Section 28 of the Revised Employment Contract, and recognizing that the Revised Employment Contract also incorporated the terms of the MWOFA, the Fifth Circuit determined that the injured Filipino seaman was required to adjudicate his dispute in the Philippines. *Id.* at 220. The court then analyzed the POEA forum selection clause against the backdrop of the Supreme Court's jurisprudence in *M/S Bremen v. Zapata Off–Shore*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), and *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), and ultimately held that the forum selection clause was both valid and enforceable, and applicable to the seaman's tort claims. *Id.* at 220–22.

Shortly following the Fifth Circuit's ruling in *Marinechance*, this Court also had occasion to evaluate the enforceability of a POEA forum selection clause in *Sabocuhan v. Geco–Prakla*, 78 F.Supp.2d 603 (S.D.Tex.1999) (Kent, J.). In *Sabocuhan*, the plaintiff was an injured Filipino seaman whose POEA employment contract also incorporated the Revised Employment Contract for Seafarers. *Id.* at 604–05. The plaintiff in *Sabocuhan* did not dispute that his employment contract incorporated

*Agencies, Ltd.*, 969 F.2d 953, 956 (10th Cir. 1992) (all deciding that a motion to dismiss premised upon the enforcement of forum selection clause is governed by Rule 12(b)(3)).

Section 28 of the Revised Employment Contract, nor that it incorporated the MWOFA provisions. *Id.* at 605. The plaintiff further did not argue that the relevant provisions had in any way changed since the Fifth Circuit's decision in *Marinechance.* *Id.* Recognizing that the forum selection clause in *Sabocuhan* was patently identical to its predecessor clause in *Marinechance,* this Court accordingly enforced the POEA forum selection clause, and dismissed the plaintiff's lawsuit for improper venue. *Id.*

In the case at hand, Plaintiff De Joseph strenuously attempts to distinguish his case from that of *Marinechance* and *Sabocuhan.* Principally, De Joseph contends that the inclusion of one additional sentence in his POEA employment contract is sufficient to render the entire forum selection clause permissive, rather than mandatory. In the alternative, De Joseph suggests that the clause is ambiguous, and should nonetheless be construed against Defendants. The particular dispositive language to which De Joseph points is the last sentence of Paragraph 4 of the POEA employment contract, which states: "This procedure shall be without prejudice to any action that the parties may take before the appropriate authority." Based upon this solitary sentence alone, De Joseph concludes that he should not be confined to adjudicating his dispute exclusively in the Philippines, but rather should be allowed to file suit in any venue that would otherwise be permissible. To buttress this interpretation, De Joseph relies on *Celebrity Cruises, Inc. v. Hitosis,* 785 So.2d 521 (Fla.Dist.Ct.App.2000), a case in which a Florida state district court held that the identical language in a POEA employment contract made the forum selection clause permissive, rather than mandatory. *Id.* at 522.

While the Court acknowledges that the language in De Joseph's POEA employment contract differs slightly from that in *Marinechance* and *Sabocuhan,*[4] it fundamentally disagrees that the last sentence of Paragraph 4 somehow alters the mandatory character of the forum selection clause. As exemplified by the textual analysis proffered in *Marinechance,* the POEA employment contract cannot be interpreted in a vacuum, namely because, by its very terms, it incorporates the provisions of the Revised Employment Contract for Seafarers, which in turn incorporates the provisions of the MWOFA. The exact meaning of the language contained in Paragraph 4 of the POEA employment contract, then, cannot be properly assessed without concomitantly reviewing the provisions of the Revised Employment Contract and the MWOFA. Of particular relevance here, Sections 16 and 28 of the Revised Employment Contract, as well as the exclusive jurisdiction provision of the MWOFA, persuasively indicate that the phrase "appropriate authority," as used in the last sentence of Paragraph 4, refers only to the POEA and the NLRC. Under this textual construction, an aggrieved Filipino seaman would be restricted to the grievance procedure outlined in the first two sentences of Paragraph 4 (and also codified in Section 16 of the Revised Employment Contract), except that such "procedure shall be without prejudice to any action that the parties may take before" the POEA and the NLRC only, *not* any

---

4.  The counterpart language used in the POEA employment contract in *Marinechance* and *Sabocuhan* reads: "All claims, complaints or controversies relative to the implementation and interpretation of this overseas employment contract shall be exclusively resolved through the established grievance machinery in the Revised Employment Contract for Seafarers, the adjudication procedures of Philippine Overseas Employment Administration and the Philippine Courts of Justice, in that order." *Marinechance,* 143 F.3d at 219.

permissible tribunal located anywhere in the world.

The reasonableness of this interpretation is evidenced by the plain language of Sections 16 and 28 of the Revised Employment Contract, as well as the exclusive jurisdiction provision of the MWOFA. A simple comparison of Section 16 with Paragraph 4, facilely reveals that Paragraph 4 merely paraphrases the procedural rights already conferred in Section 16. Specifically, Section 16(A) outlines the seaman's grievance procedure, requiring a seaman to first submit his complaint to the head of the relevant department, and then, and only upon obtaining an unsatisfactory result, to appeal to the management of the company or a Philippine Labor Attache or consular office overseas. The first two sentences of Paragraph 4 essentially state the same. Next, Section 16(C) qualifies Section 16(A) by noting that the grievance procedure "shall be without prejudice to the jurisdiction of the Philippine Overseas Employment Administration (POEA) or the National Labor Relations Commission (NLRC) over any unresolved complaints arising out of shipboard employment that shall be brought before it by the seafarer." Analogously, the third and final sentence of Paragraph 4 states that the grievance procedure "shall be without prejudice to any action that the parties may take before the appropriate authority." Viewing Paragraph 4 in conjunction with Section 16, then, it is manifestly evident that the last sentence of Paragraph 4 refers only to the fact that a Filipino seaman, in addition to invoking the Section 16 grievance machinery, may pursue any other actions permitted before the POEA or the NLRC.

Moreover, the exclusive jurisdiction provisions contained in Section 28 of the Revised Employment Contract and the incorporated MWOFA, further bolster this interpretation. Section 28 provides that "[t]he Philippine Overseas Employment Administration (POEA) or the National Labor Relations Commission (NLRC) shall have original and exclusive jurisdiction over any and all disputes or controversies arising out of or by virtue of this Contract." Additionally, the MWOFA grants the Labor Arbiters of the NLRC the exclusive jurisdiction to hear "claims arising out of an employer-employee relationship or by virtue of any law or contract involving Philippine workers for overseas employment including claims for actual, moral, exemplary and other forms of damages." Because both of these provisions vest exclusive jurisdiction over seamen's disputes in the POEA and the NLRC, they lend further, and perhaps even more formidable, credence to the view that the "appropriate authority" mentioned in the last sentence of Paragraph 4 refers only to the POEA and the NLRC, *not* every permissible venue in the world. *See also Marinechance,* 143 F.3d at 220–21 (deeming both Section 28 of the Revised Employment Contract, and the exclusive jurisdiction provision of the MWOFA, as independent and enforceable provisions mandating the resolution of seamen's disputes in a Filipino forum).

Based on these specific provisions, the Court wholly rejects Plaintiff's insinuation that the last sentence of Paragraph 4 somehow renders the POEA forum selection clause permissive or ambiguous. In stark contrast, the Court unequivocally holds that the instant POEA forum selection clause, much like its predecessor clauses in *Marinechance* and *Sabocuhan,* is mandatory and exclusive, such that Plaintiff De Joseph is required by its plain terms to adjudicate his grievance solely in a Filipino venue. Although the Court admittedly sympathizes with Plaintiff's plight, as it does in any and every case involving an injured seaman, it also realizes that the POEA forum selection clause was designed to protect Filipino seamen

working aboard international vessels. That vessel owners, who are also obliged to accept the POEA terms, rather than Filipino seamen, have thus far been the parties seeking to enforce these clauses, does not in any way diminish the beneficent and liberal purposes behind the enactment. Even if this were not the case here, the Court would nevertheless be compelled to comply with the clear edicts in *Marinechance.*

## IV.

For all of the reasons set forth above, the Court hereby **GRANTS** Defendants' Motion to Dismiss on the specific ground that Plaintiff has filed his action in an improper venue pursuant to Fed.R.Civ.P. 12(b)(3). The Court accordingly hereby **DISMISSES WITHOUT PREJUDICE** any and all of Plaintiff's claims against any and all Defendants in this action. Plaintiff is free to refile these claims with the appropriate authority in the Republic of the Philippines, as expressly authorized by the terms of the POEA employment contract. The Court further instructs the Parties not to file any further pleadings on this matter in this Court, including motions to reconsider and the like. Each Party is to bear its own taxable costs and expenses incurred herein to date.

**IT IS SO ORDERED.**